### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COURTNEY HONTZ, | : | No. 3:25cv914 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH BEDNARSKI, | : | |
| **Defendant** | : | |

## MEMORANDUM

The Superior Court of Pennsylvania reversed Plaintiff Courtney Hontz's indirect criminal contempt conviction after Defendant Joseph Bednarski arrested her for violating a Protection from Abuse ("PFA") Order. The overarching question in this subsequent damages lawsuit is not who was right about the contempt charge. Because of the qualified immunity afforded to police officers, the question is whether the defendant violated clearly established law. Despite a carefully worded complaint, qualified immunity prevents this case from moving forward to discovery, at least in federal court. For the reasons set forth below, Bednarski's motion to dismiss the plaintiff's civil rights claims will be granted, and the court will decline supplemental jurisdiction over her state law claims.

## Background

In 2022, the marriage of Courtney Hontz and Jared Hontz came to an end.[1] (Doc. 1-1, Compl. ¶ 1).  Although Jared owned the marital home, they agreed that Courtney would occupy the residence during the divorce proceedings. Id. ¶¶ 7–9.

On December 6, 2022, for reasons only partly explained in the complaint—"previous physical violence" at the home—Jared obtained a protection order against Courtney under the Pennsylvania Protection from Abuse Act, 23 PA. CONS. STAT. §§ 6101–6122.[2] Id. ¶¶ 10, 19.  The protection order directed that Courtney "shall not abuse, harass, stalk, threaten, or attempt or threaten to use

---

[1] These brief background facts are derived from plaintiff's complaint.  At this stage of the proceedings, the court must accept all factual allegations in the complaint as true.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  The court makes no determination, however, as to the ultimate veracity of these assertions.

[2] Plaintiff references an unreported Superior Court memorandum from state court proceedings at least twice in her brief in opposition to the motion to dismiss. (Doc. 7 at 7 and n.7).  When ruling on a motion to dismiss, the court may take judicial notice of a prior judicial opinion. McTernan v. City of York, Penn., 577 F.3d 521, 526 (3d Cir. 2009); see also Smith v. Lynn, 809 F. App'x 115, 117 (3d Cir. 2020) (finding no error in a magistrate judge's review of decisions by the state court in divorce proceedings).

The Superior Court's memorandum briefly mentions the testimony from the December 6, 2022 PFA hearing.  Hontz v. Hontz, 331 A.3d 602 (Table), 2024 WL 4647910 at *1 (Pa. Super. Ct. 2024).  At that time, Jared testified that Courtney "turned off the security cameras in the [r]esidence, chased him around, slammed his hand in a carport door, grabbed him, knocked him down, and injured his arm and knee." Id.  During her time on the stand, Courtney "denied assaulting [Jared] and testified that [Jared] hit her during the altercation." Id.  Although mentioned here for background, the state court testimony discussed in the Superior Court's memorandum will not be relied upon for the qualified immunity analysis.  Rather, the court will only consider that memorandum in earnest when discussing whether amendment would be futile.

physical force against" Jared. Id. Courtney was *not* ordered to leave the residence. Id. ¶ 11.

Three days later, on December 9, 2022 at 10:30 PM, Jared attempted to enter the marital home. Id. Regarding the events that night, plaintiff alleges: "As [Jared] was attempting to open the door to the back porch to enter the home, [Courtney] reinforced the door to prevent it from being opened." Id. ¶ 12. According to Courtney, "reinforced" means that she "simply shut or slammed her door[.]" Id. ¶ 30. Courtney alleges that Jared was not injured and that this conduct did not violate the PFA order. Id. ¶¶ 13–15.

Jared was apparently persuaded by coworkers to report the incident to the Pennsylvania State Police some eight days after the incident, on December 17, 2022. Id. ¶ 16. Defendant Bednarski is a member of the Pennsylvania State Police. Id. ¶ 4. According to the complaint, Jared told Trooper Bednarski that "he had opened the door, and that [Courtney] closed the door and that the door struck him, causing no injury, and it forced him out of the house." Id. ¶ 17. Relying on Jared's account of events at the home, Bednarski arrested Courtney and charged her indirect criminal contempt ("ICC")—a criminal offense under Pennsylvania law for violating a protection order. Id. ¶ 20; see also 23 PA. CONS. STAT. §§ 6113, 6114.

3

Bednarski took Courtney into custody. (Doc. 1-1, Compl. ¶ 21).  At some point, he handcuffed her to the bench at the State Police barracks.  Id.

Plaintiff worked as a police officer herself. Id. ¶ 3.  The ICC charge caused her to lose her position. Id. ¶¶ 22–23.

Trooper Bednarski pursued the ICC charges in the Luzerne County Court of Common Pleas. Id. ¶ 24.  Courtney alleges that she "refused to accept a deal[,]" i.e., that the Commonwealth prosecuted the case and tried to negotiate a plea before the bench trial. Id.  After a bench trial, a Court of Common Pleas judge found Courtney guilty. Id. ¶¶ 24–25.  Despite the earlier agreement between Courtney and Jared, the court ordered Courtney to leave the marital residence. Id. ¶ 25.

Courtney appealed the verdict to the Superior Court of Pennsylvania. Id. ¶ 27.  The Superior Court reversed, vacated the conviction, and entered judgment in Courtney's favor. Id. ¶ 28.  She thus prevailed on the ICC charge that Trooper Bednarski brought against her.

The Superior Court's reversal gave rise to this action.  Courtney filed suit in the Luzerne County Court of Common Pleas—the same court that convicted her—asserting claims under 42 U.S.C. § 1983 and state law against Bednarski, who made the arrest which set the proceedings in motion.  On May 23, 2025, Trooper Bednarski removed the action to the United States District Court for the

Middle District of Pennsylvania. (Doc. 1). Counts One and Two advance Section 1983 false arrest and malicious prosecution claims against the defendant. (Doc. 1-1 ¶¶ 35–46. Counts Three and Four raise parallel claims under state law.

Bednarski raised qualified immunity in a motion to dismiss shortly thereafter. (Doc. 3). For the reasons set forth below, the motion will be granted as to the Section 1983 claims based on the well-developed principles of qualified immunity.

**Jurisdiction**

The court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 based on the alleged violation of plaintiff's constitutional rights. Pursuant to 28 U.S.C. § 1367(a), the court has supplemental jurisdiction over plaintiff's state law claims asserted in this matter.

**Standard of Review**

Bednarski's motion to dismiss arises under Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief which is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at

5

570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).  While the court must accept all well-pled factual allegations as true and draw all inferences in the plaintiff's favor, Phillips, 515 F.3d at 221, it need not credit "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," Twombly, 550 U.S. at 555.

Bednarski asserts qualified immunity with respect to plaintiff's Section 1983 claims.  Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009).

Qualified immunity is assessed by addressing two different prongs.  Specifically, at this stage of the proceedings, the court must decide: 1) whether the alleged facts make out a violation of a constitutional right; and 2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. Id. at 227 (citation omitted).  The court has discretion to address either prong first. Id. at 236.

The first prong of the qualified immunity analysis "fits like a glove at the motion-to-dismiss stage" because "a well-pleaded [Section] 1983 complaint necessarily alleges a constitutional violation for purposes of qualified immunity,

6

while a complaint that fails to plausibly plead the violation of a right does not."

Stringer v. Cnty. of Bucks, 141 F.4th 76, 85 (3d Cir. 2025).

The second prong of a qualified immunity analysis—whether the right allegedly violated was "clearly established"—presents courts with "unique difficulties at the pleading stage." Id. (citing Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002); Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996)). First, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established. Id. at 85 (citation omitted). Second, defining the right with specificity is a fact-intensive inquiry that must be undertaken in light of the specific context of the case. Id. at 85–86 (citing Grant, 98 F.3d at 122; Thomas v. Indep. Twp., 463 F.3d 285, 300 (3d Cir. 2006)). Where a complaint does not include sufficient facts to allow the right to be identified with the requisite specificity, the district court must deny a motion to dismiss and seek to resolve qualified immunity at the summary judgment stage, limiting discovery as need be to focus on issues concerning that defense. See id. at 86–87.

Stringer, however, cannot be read to create a categorial ban on courts resolving qualified immunity on the facts of a complaint. Rather, the Supreme Court has stressed repeatedly that immunity questions must be resolved at the earliest possible stage of litigation. Hunter v. Bryant, 502 U.S. 224, 227 (1991).

7

After all, the qualified immunity doctrine is designed to "avoid 'subjecting government officials either to the costs of trial or to the burdens of broad-reaching discovery' in cases where the legal norms the officials are alleged to have violated were not clearly established at the time." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 817–18 (1982)).

Still, dismissing a case on qualified immunity grounds is a rare event. See Stringer, 141 F.4th at 86–87.   Under the framework for considering qualified immunity at the Rule 12(b)(6) stage, a defendant is "entitled to dismissal only if they can show, based on the pleadings alone, that this right was neither clearly established nor obvious." Stringer, 141 F.4th at 88 (citing Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) (footnote omitted))

**Analysis**

Courtney Hontz lost her job as a police officer because another police officer, Defendant Bednarski, arrested and prosecuted her for violating a PFA order.  She seeks recourse under Section 1983 for the alleged false arrest and malicious prosecution.

The purpose of Section 1983 "is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158,

8

161 (1992). "Police officers, embodying the authority of the state, are liable under [Section] 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity." Curley, 499 F.3d at 206. As alluded to above, the two-part qualified immunity test is well settled, and courts may address the prongs in any order. Montemuro v. Jim Thorpe Area Sch. Dist., 99 F.4th 639, 642 (3d Cir. 2024) (citations omitted).

Beginning a qualified immunity analysis with the first prong remains "often beneficial." Pearson, 555 U.S. at 232; see also Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014) ("Normally…in considering a qualified immunity issue, [the court asks] whether a defendant's conduct violated a [plaintiff's] statutory or constitutional rights before addressing whether that law had been established at the time of the violation so that the unlawfulness of the conduct should have been apparent to an objectively reasonable official.") (citations omitted).

The substantive constitutional issues will be addressed first.[3]

**1. Whether Plaintiff Alleges a Violation of her Constitutional Rights**

Plaintiff asserts Section 1983 claims for false arrest and malicious prosecution. "An arrest may violate standards of the Fourth Amendment…if made without probable cause to believe that a crime has been committed[.]"

---

[3] Although Trooper Bednarski separately argues that he had probable cause to arrest the plaintiff based on the facts alleged, that argument is considered under the first prong of qualified immunity analysis. (Doc. 7, Def. Br. in Supp. at 9–16).

9

Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994); see also James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012).  Malicious prosecution claims arise out of the same Fourth Amendment guarantee against unreasonable seizures. Rivera-Guadalupe v. City of Harrisburg, 124 F.4th 295, 303 (3d Cir. 2024).  Furthermore, false arrest and malicious prosecution claims share a common element of proof— that a police officer charged the plaintiff without probable cause to believe that she had committed a crime.  Urda v. Sokso, 146 F.4th 311, 313 (3d Cir. 2025).  Although a malicious prosecution claim requires a plaintiff to plead and prove other elements, see Harvard v. Cesnalis, 973 F.3d 190, 203 (3d Cir. 2020) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)), Trooper Bednarski only argues that a lack of alleged probable cause has been insufficiently alleged, the common element between plaintiff's two Section 1983 claims. (Doc. 7, Def. Br. in Supp. at 10 n.1).

"The probable cause inquiry is 'commonsense,' 'practical,' and 'nontechnical' and it is based on the totality of the circumstances and is judged by the standard of 'reasonable and prudent men.' " United States v. Donahue, 764 F.3d 293, 300 (3d Cir. 2014) (quoting Illinois v. Gates, 462 U.S. 213, 230-31 (1983)).  "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by

10

the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995).  The existence of probable cause is generally a factual issue in a Section 1983 action. Groman v. Twp. of Manalapan, 47 F.3d 628, 635 (3d Cir. 1995); see also United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984).

In this case, Courtney Hontz was arrested and prosecuted for ICC.  To guide the probable cause analysis, at least two statutory provisions govern arrest and prosecution for a PFA violation.  First, the arrest provision provides:

> An arrest for violation of an order issued pursuant to this chapter or a foreign protection order may be without warrant upon probable cause whether or not the violation is committed in the presence of the police officer…in circumstances where the defendant has violated a provision of an order consistent with section 6108(a)(1), (2), (3), (4), (6), (7), (9) or (9.1) (relating to relief).

23 PA. CONS. STAT. § 6113(a).

Notably, "[a] police officer…*shall* arrest a defendant for violating an order issued" under the PFA Act. Id. (emphasis added).

Second, a provision relevant to prosecution provides: "[w]here the police…have filed charges of indirect criminal contempt against a defendant for violation of a protection order…, the court may hold the defendant in indirect criminal contempt and punish the defendant in accordance with law." Id. § 6114(a).  There is no right to a jury trial on an ICC charge. Id. § 6114(b)(3).

11

Four elements must be proven beyond a reasonable doubt to convict a person charged with ICC for violation of a protection order:

> (1) the order must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited; (2) the contemnor must have had notice of the specific order or decree; (3) the act constituting the violation must have been volitional; and (4) the contemnor must have acted with wrongful intent.

Commonwealth v. Baker, 766 A.2d 328, 331 (Pa. 2001).

The provisions of the PFA ordered Courtney to not "abuse, harass, stalk, threaten, or attempt or threaten to use physical force against" Jared.[4] (Doc. 1-1, Compl. ¶¶ 10, 33). The facts known to Trooper Bednarski—as alleged—establish that it was Jared Hontz, the protected party and PFA petitioner, who initiated the encounter, not the plaintiff. Id. ¶¶ 16–20. As further alleged, the defendant knew that Jared traveled to the marital residence, where Courtney was lawfully living by prior agreement, and attempted to enter through the back door late at night. Id. At the same time, Jared allegedly told Bednarski that Courtney closed the door on him, and it struck him. Id. Bednarski was also allegedly aware that there had been previous physical violence at the house. Id. ¶¶ 19–20.

---

[4] By law, a final PFA order "must direct the defendant to refrain from abusing, harassing, stalking, threatening or attempting or threatening to use physical force against the plaintiff…and must order that the defendant is subject to the firearms, other weapons or ammunition and firearms license prohibition relinquishment provisions [of the Act]." 23 PA. CONS. STAT. § 6108(a.1).

12

These allegations, as relayed to Trooper Bednarski, can be read two different ways. On one hand, they describe Jared, the protected party, initiating unwanted contact with Courtney, the respondent, at the threshold of their home late at night and Courtney taking a minimal, nonviolent step to prevent the petitioner from entering. On the other hand, they describe Jared, the protected party, going to the marital home he was not legally precluded from, where there was previous domestic violence. There, regardless of the time of day, Jared's estranged wife closed the door on him, striking him and forcing him out of the house.

There are issues with plaintiff alleging a lack of probable cause in her complaint. Probable cause is not a high bar. District of Columbia v. Wesby, 583 U.S. 48, 57 (2018) (citation omitted). Two reasonable police officers could debate probable cause under the facts alleged. However, on a motion to dismiss, all reasonable inferences are drawn in favor of the plaintiff. Stringer, 141 F.4th at 90. The court will credit the allegations of the complaint as plausibly advancing Trooper Bednarski's lack of probable cause—largely for the sake of moving the analysis forward to the plaintiff's real "roadblock." See Urda, 146 F.4th at 314. As discussed next, plaintiff's allegations cannot get past the clearly established prong of the qualified immunity analysis.

13

## 2. Whether the Right Was Clearly Established

Qualified immunity shields police from false arrest and malicious prosecution claims unless they violated a right that was clearly established at the time the defendant acted. See id. at 313–14 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). This standard "gives ample room for mistaken judgments," Malley v. Briggs, 475 U.S. 335, 343 (1986), by protecting "all but the plainly incompetent or those who knowingly violate the law[,]" id. at 341. And the protection of qualified immunity "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson, 555 U.S. at 231 (cleaned up). Existing case law, "must give the official 'fair warning' that his conduct is unconstitutional." Stringer, 141 F.4th at 85 (citing Hope v. Pelzer, 536 U.S. 730, 741 (2002)).

Thus, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question *beyond debate*." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (citations omitted) (emphasis added). That means "a sufficiently clear foundation in then-existing precedent," i.e., "dictated by controlling authority or a robust consensus of cases of persuasive authority." Wesby, 583 U.S. at 63 (cleaned up). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every

14

reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." Id. (citation omitted).

The Supreme Court has repeatedly stressed that the clearly established inquiry requires a high degree of specificity and not at a high level of generality. Id. (citations omitted).  The inquiry must be undertaken considering the specific context of the case, not as a broad general proposition.  Mullenix v. Luna, 577 U.S. 7, 12 (2015) (per curiam) (citations omitted).

The high degree of specificity "is especially important in the Fourth Amendment context[.]" Id.  It requires identification of "a case where an officer acting under similar circumstances…was held to have violated the Fourth Amendment." White v. Pauly, 580 U.S. 73, 79 (2017) (per curiam).  Cases that present a unique set of facts and circumstances serve as an "important indication" to courts that officer conduct does not violate a clearly established right. Id. at 80.

Put another way, courts may not frame Fourth Amendment claims in the abstract, such as "people may not be arrested or prosecuted without probable cause." Urda, 146 F.4th at 314.  Otherwise, qualified immunity turns into a rule of "virtually unqualified liability[.]" Id. (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987)).

15

Additionally, not all Fourth Amendment claims are the same at the motion to dismiss stage.  For example, excessive force claims involve evaluation of the objective reasonableness of an officer's actions.  Rush v. City of Philadelphia, 78 F.4th 610, 620 (3d Cir. 2023).  That involves many factual variables and details that complaints typically lack. See id.; Stringer, 141 F.4th 85–86.  Although the matter involved a Fourteenth Amendment excessive force claim arising out of pretrial detention, Stringer supplies a valuable example.  There, the court noted a litany of unresolved questions at the motion to dismiss stage: whether the detainee was actively resisting or non-compliant, whether she posed a threat to herself or others at each instance, how long she was restrained, why she was pepper sprayed and for how long, and what each defendant knew about her condition. 141 F.4th at 89.  With all of those unknown variables, qualified immunity could not be resolved without some discovery. Id.

This case, however, is a he-said, she-said type of matter arising out of a domestic violence protection order.  The officer was not at the marital residence at the time the alleged PFA violation occurred.  Consequently, in her complaint, plaintiff pled the factual basis upon which the arrest was made, or, as she asserts, the lack of factual basis to support probable cause.  Therefore, the complaint's own allegations define the universe of information available to the officer at the time of arrest (and prosecution) for an evaluation of qualified

16

immunity. That same universe of facts informs whether existing precedent put the officer on notice that his conduct was unlawful. Unlike most cases where qualified immunity is raised on a 12(b)(6) motion, the facts alleged in the complaint are sufficient for the court to define the right with specificity and to assess whether existing precedent clearly established that those facts were insufficient to support probable cause.

To reiterate, the court must "first define the right specifically, based on the particular facts[,]" then "figure out if a reasonable police officer would have been on notice that his conduct would violate that right." Otero v. Kane, 161 F.4th 189, 194 (3d Cir. 2025) (citations omitted). The court examines qualified immunity from the perspective of the government official at the time of the alleged violation. Burns v. PA Dep't of Corr., 642 F.3d 163, 177 (3d Cir. 2011). Based on the facts plaintiff presented in her own complaint, the framing involved is straightforward: whether preexisting law clearly established that a police officer lacks probable cause to arrest for a PFA violation when the protected party reports that the subject of the order struck him with a door and forced him from the marital residence—a location with a documented history of domestic violence. (Doc. 1-1, Compl. ¶¶ 10, 16–20).

If a plaintiff does not come forward with sufficiently on-point indications that the relevant law is clearly established, then the defendant gets qualified

17

immunity. Courney v. City of Englewood, 793 F. Supp. 3d 615, 621 (D.N.J. 2025) (citing Davis v. Scherer, 468 U.S. 183, 197 (1984) (12 additional citations omitted)).  In her brief in opposition, plaintiff cites three cases involving alleged PFA violations. (Doc. 10 at 10 (citing Commonwealth v. McMillian, 245 A.3d 1056 (Table), 2020 WL 7239529 (Pa. Super. Ct. 2020); Commonwealth v. Haigh, 874 A.2d 1174, 1175 (Pa. Super. Ct. 2005); Muto v. Asure, No. 3:CV-11-1344, 2011 WL 3794954, at *1 (M.D. Pa. Aug. 3, 2011), report and recommendation adopted, No. 3:CV-11-1344, 2011 WL 3740351 (M.D. Pa. Aug. 23, 2011)).  Not one of these cases mentions anything about probable cause.  And the facts of these cases are far removed from those alleged in plaintiff's complaint.[5]

Plaintiff thus has not offered, and the court has not independently located, any decision from the Supreme Court, the Third Circuit, or any other court holding that a police officer lacks probable cause to arrest for a PFA violation under the circumstances alleged here.  It is unlikely that we will ever find one.

---

[5] McMillian affirmed a trial court's ICC guilty verdict. 2011 WL 3794954, at *1.  Haigh split the Superior Court panel "under the peculiar circumstances of the case," an ICC guilty verdict stemming from a question the respondent-husband made to a petitioner-wife about his concern for her possible breast cancer, which he made *during an ICC hearing* (which initially stemmed from the respondent trying to contact the petitioner from jail after their son informed him that the wife had a tumor removed from her breast). 874 A.2d at 1174–78.  The dissent, finding reversal of the ICC verdict and judgment of sentence to be in error, noted the complexities of domestic abuse protection order cases, including the state of mind of the defendant. Id. at 1178.  Muta concerned a habeas corpus petition stemming from an ICC verdict and sentence and ultimately concluded that the petition was moot. 2011 WL 3794954 at *1–6.

See e.g. Gerhart v. Energy Transfer Partners, L.P., No. 1:17-CV-01726, 2018 WL 6589586, at *16 (M.D. Pa. Dec. 14, 2018) (Kane, J.) (granting a motion to dismiss on qualified immunity grounds after being unable to locate precedent involving similar circumstances, i.e., an individual's rights under the Fourth Amendment were violated by arresting for criminal contempt or a similar charge). This silence in the case law is not a deficiency in Trooper Bednarski's argument; it is the argument. The defendant is thus entitled to qualified immunity on the face of plaintiff's complaint.

### 3. Amendment is Futile

In civil rights cases, "district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). This is not a case that would be able to proceed even with an amendment of the Section 1983 claims because no amount of additional factual detail can cure the fundamental problem that the law was not clearly established with respect to the officer's alleged conduct.[6] Plaintiff went to trial on the indirect criminal contempt charge

---

[6] "[I]n rare circumstances" obvious violations of constitutional rights obviate the need for settled law. Urda, 146 F.4th at 314. Some examples cited in Urda include handcuffing a shirtless prisoner to a hitching post in the sun for seven hours or forcing a prisoner to live in prison cells covered in feces or awash in sewage for six days. Id. (citing Hope, 536 U.S. at 734–35; Taylor v. Riojas, 592 U.S. 7, 8–9, (2020). Although the court appreciates that the plaintiff lost her job

and lost. Reversal of that verdict by the Superior Court of Pennsylvania still means that a state trooper, a deputy district attorney, and a county judge thought there was probable cause and proof beyond a reasonable doubt on all the elements of the offense. At best, any amendment would set forth arguable or mistaken probable cause and continue to describe a scenario where the law was not clearly established within the requisite context of the case.[7] See Hunter, 502

---

as a police officer from the underlying PFA proceedings, calling what happened here an "obvious" constitutional violation is a long reach.

[7] The court also now considers the Superior Court memorandum referenced by plaintiff in her brief in opposition to defendant's motion to dismiss in deciding whether amendment would be futile. Here is that court's summation of the facts from the ICC hearing:

> A hearing on the criminal contempt charge was held on January 24, 2023. At this hearing, [Jared] testified that on December 9, 2022, he discovered that [Courtney] had changed the locks at the Residence, that he contacted the state police, and that the state police called him back saying that they had contacted [Courtney] and that she agreed to give him a key. He testified that after he learned this from the state police, he went back to the Residence with his brother and knocked on the door and that [Courtney] told them to go away. [Jared] testified that he then went around to the back porch and found an unlocked door and that when he put his hand on the knob of door and began to go into the Residence, [Courtney] pushed the door closed and locked it, pushing him out of the Residence. In response to leading questions from the Commonwealth and the trial court, [Jared] agreed the door was slammed and that the door hit him but testified that the door did not injure him. [Jared] admitted that he was not living at the Residence at the time and testified that he did not understand that what [Courtney] did violated the PFA Order and did not report a violation of the PFA Order until December 17, 2022, after his supervisor looked at the PFA Order and advised him that the incident violated the PFA Order. He testified that the incident occurred earlier than 10:30 p.m., but that it was dark out.
>
> [Courtney] testified that she was living in the Residence on December 9, 2022, that she only changed the lock on the front door,

20

U.S. at 227 (citing Anderson, 483 U.S. at 641); Courney, 793 F. Supp. 3d at 628; see also Heien v. North Carolina, 574 U.S. 54, 60–61 (2014).

### 4. The State Law Claims Will Be Remanded

Trooper Bednarski's motion to dismiss failed to address Hontz's parallel state law tort claims for false arrest and malicious prosecution. The law provides that federal courts should not entertain pendent state law claims when federal causes of action are dismissed. United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Here, the court will decline to exercise supplemental jurisdiction in this matter based on the dismissal of all claims over which the court had original jurisdiction. 28 U.S.C. § 1367(c)(3); see also Dirauf v. Berger, 57 F.4th 101, 108 (3d Cir. 2022) (citing Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 181 (3d Cir. 1999)). Because this action originated in the Luzerne County Court of Common Pleas, and dismissal without prejudice may cause the plaintiff to incur additional attorneys' fees and costs, the court will remand the state law claims.

---

and that [Jared] had a key to the back door. [Courtney] denied that she slammed the door and testified that she put her hand over the door and did not let [Jared] enter because it was late at night.

Hontz, 2024 WL 4647910 at *1–2 (citations to the trial court record omitted).

Even with these additional facts available for an amendment, the law was not clearly established to provide Trooper Bednarski with fair warning that his arrest and prosecution of the plaintiff violated her Fourth Amendment right either based on existing case law or "obviousness." A reasonable officer, "looking at the entire legal landscape *at the time of the arrest*[]," could have interpreted the law as permitting the arrest here. Wesby, 583 U.S. at 68 (emphasis added).

21

See Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) ("While [28 U.S.C] § 1367(c) does not specify what disposition the district court is to make of state claims it decides not to hear…in a case that has been removed from a state court, a remand to that court is a viable alternative to a dismissal without prejudice.") (citations omitted); see also Harris v. Wetzel, 822 F. App'x 128, 131 (3d Cir. 2020) (per curiam) ("If the District Court declines to exercise its supplemental jurisdiction, it should remand the cases to state court.").

**Conclusion**

Granting qualified immunity at this early stage is not "too soon" because plaintiff's complaint was "specific enough to assess whether the right was clearly established at the time it was allegedly violated." Stringer, 141 F.4th at 81. For the reasons set forth above, Trooper Bednarski enjoys qualified immunity from the Section 1983 claims in plaintiff's complaint. The court declines to exercise supplemental jurisdiction over plaintiff's state law claims. Plaintiff's state law claims will be remanded. An appropriate order follows.

Date: 3/5/26

BY THE COURT:

_____
JUDGE JULIA K. MUNLEY
United States District Court